UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 10-559(DSD/SER)

Leland Melvin Otto,

         Plaintiff,

v.                                                          **ORDER**

City of Victoria,

         Defendant.


     Jeffrey D. Schiek, Esq., Philip G. Villaume, Esq. and
     Villaume & Schiek, P.A., 2051 Killebrew Drive, Suite 611,
     Bloomington, MN 55425, counsel for plaintiff.

     Patricia Y. Beety, League of Minnesota Cities, 145
     University Avenue West, St. Paul, MN 55103, counsel for
     defendant.


     This matter is before the court upon the motion for summary judgment by defendant City of Victoria (the City).  Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.


                            **BACKGROUND**

     This employment dispute arises out of the termination of plaintiff Leland Marvin Otto on February 27, 2009.  Otto began work for the City as an assistant laborer in the Department of Public Works in 1985.  At all times relevant to this action, Otto was classified as a Public Works Worker 2.  A Public Works Worker 2 performs "non-supervisory, semi-skilled and skilled operational and

maintenance responsibilities in all department areas...." Beety Aff. Ex. L. Responsibilities include patching and repairing streets and storm sewers, snow plowing, mowing, tree trimming, trash removal, ice rink maintenance, sewer cleaning, equipment maintenance and repair and basic carpentry. Id. The work is "typically outside in all seasons of the year." Id.

Otto injured his back at work in 1990[1] and 2006, and received workers' compensation benefits. Compl. ¶¶ 5-6; Otto Dep. 62:12-64:2. He stopped working in January 2007 due to his back injuries. See Otto Dep. 58:5-13; Beety Aff. Exs. D-F (notes from physicians). Otto had surgery at some point during 2007. On September 11, 2007, Otto's neurosurgeon classified Otto's work status as indefinitely "Off Work/Totally Disabled." Beety Aff. Ex. G. In May 2008, Dr. Frank Wei allowed Otto to return to work provided that he not lift more than ten pounds, and that he lift ten pounds only occasionally. Id. Ex. H. On May 29, 2008, the City told Otto it did not have work that would accommodate his restrictions. Villaume Ex. G. Otto did not return to work, and continued to receive benefits. In December 2008, Dr. Wei cleared Otto to work four hours a day in sedentary work, and ordered a functional capacity evaluation (FCE). Beety Aff. Ex. I.

---

[1] Some portions of the record indicate an injury and workers' compensation benefits in 1988 rather than 1990.

The FCE evaluator concluded that "it is not recommended that [Otto] return to his pre-injury Public Works position unrestricted" and that he could perform work between a "sedentary" and "light" level. Id. Ex. J, at 6. The evaluator noted that Otto lifted and carried 35 pounds "on a seldom basis" and 15 pounds "on an occasional basis." Id. at 5. He could bend, crouch and kneel "occasionally." Id. at 9. The evaluator, assuming that Otto "functions as a supervisor and can assign heavier, more repetitive work to others" found "no reason to restrict him from a modified Public Works position." Id. at 6. On February 3, 2009, Dr. Wei recommended "permanent restrictions" based on the FCE. Id. Ex. K.

On February 19, 2009, the City Administrator informed Otto that the City intended to recommend termination of his employment at the next city council meeting because:

> Our current information indicates that you are not able and not likely to become able to perform your job functions with the city. Your position as a Public Works Worker 2 requires constant and considerable exertion. Your most recent medical information indicates that you are not able to perform these duties and that you are not likely to be able to do so in the future.

Id. Ex. L. The City Administrator invited Otto to provide contrary documentation and told him that he could attend the meeting. Otto attended the meeting, and stated that he could return to his job.

The city council voted to terminate Otto's employment effective February 27, 2009.[2]

On April 13, 2009, Otto filed a charge of disability discrimination with the Equal Employment Opportunity Commission (EEOC). Otto received a right-to-sue letter from the EEOC on December 9, 2009. On February 26, 2010, Otto began the present action, claiming disability discrimination in violation of Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 et seq.; age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634; retaliatory discharge in violation of Minnesota Statutes § 176.82 and denial of due process. The City moves for summary judgment. The court heard oral argument on April 22, 2011, and now considers the motion.

**DISCUSSION**

**I.   Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

---

[2] The court considered the statements of the lone city council member to vote against termination, and finds these statements are not probative of any issue in this action. <u>See</u> Roden Dep. 10:1–11:25.

A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party, and does not make credibility determinations. See id. at 249, 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."[3] Fed. R. Civ. P. 56(c)(1)(A). The evidence must be more than merely colorable; the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249-50. If a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

---

[3] The parties make only general citations to documents, in violation of Rule 56(c), which took effect December 1, 2010.

Summary judgment "is designed for every action." Torgerson v. City of Rochester, No. 09-1131, 2011 WL 2135636, at *8 (8th Cir. June 1, 2011). As a result, "[t]here is no discrimination case exception to the application of summary judgment." Id.

## II. Discrimination Claims

The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to discrimination claims under the ADA, ADEA[4] and Minnesota Statutes § 176.82 when, as here, there is no direct evidence of discriminatory or retaliatory intent. See Wilking v. Cnty. of Ramsey, 153 F.3d 869, 872 (8th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at 802-04); Randall v. N. Milk Prods., Inc., 519 N.W.2d 456, 459 (Minn. Ct. App. 1994). Under McDonnell Douglas, the plaintiff must first establish a prima facie case. See Wilking, 153 F.3d at 872 (citation omitted). The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Id. at 872-73. If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. Id. at 873. A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

---

[4] The analysis of McDonnell Douglas continues to apply to disparate-treatment cases after Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343 (2009). See Rahlf v. Mo-Tech Corp., Inc., No. 10-1113, 2011 WL 2375942, at *2 (8th Cir. June 16, 2011).

6

employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

### A. ADA Claim

To establish a prima facie case of disability discrimination under the ADA, Otto must establish that (1) he was disabled; (2) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). The first and third elements are not in serious dispute.

#### 1. Essential Functions of the Job

Otto first argues that the City discriminated against him because he was qualified to perform the essential functions of the job without accommodation. Under the ADA, "[a]n individual is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements and 'can perform the essential job functions, with or without reasonable accommodation.'" Rehrs v. Iams Co., 486 F.3d 353, 356 (8th Cir. 2007) (quoting Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000)). An employer bears the burden of showing that a particular function is essential. See Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1113 (8th Cir. 1995). "Essential functions of the job are fundamental job duties, and the employer's judgment in this regard is considered highly probative." Duello v.

Buchanan Cnty. Bd. of Supervisors, 628 F.3d 968, 972 (8th Cir. 2010) (citation and internal quotation marks omitted).

Whether a plaintiff is qualified is measured at the time of the adverse employment action, "even if the plaintiff is likely to recover in a relatively short period of time." Id. An employer may rely and act upon the written advice and restrictions imposed by an employee's physician. See Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003) ("[T]he employee's belief or opinion that she can do the function is simply irrelevant."). The ADA does not force employers to permit employees to perform functions restricted by a physician. Id.

In this case, several public works employees confirm that significant physical lifting and moving are essential functions of a public works job, and the City requires each employee to perform all of the different tasks needed in public works. Public works employee Timothy Amundsen stated, "[n]one of us have a specific job title ... we're all Publics [sic] Work workers. We shift wherever need be." Id. at 21:20-22.
Public works employees are "cross trained" so that "one day [an employee] may be in the parks" an another day "in water" or "[s]treets." Amundsen Dep. 15:5-8. Most employees have designated areas of the department, but "all ... were required" to "work in

whatever department it required." Id. at 16:19-22. One employee is "basically a floater" who has no typical designation and moves around where additional workers are needed. Id. at 16:9-12.

Each public works employee is responsible for loading and unloading dirt, gravel and debris; basic construction; cutting down trees and branches; maintenance of parks and facilities; blacktop patching, snowplowing and shoveling; and other heavy, manual-labor tasks in all types of weather conditions. Id. at 21:21-23:6. In short, public works employees "quite often ... would be moving heavy pieces of sod, dirt debris ... shoveling a lot of the times" so that "a lot of times [public works employees] were lifting heavy things" including repeatedly lifting and moving objects weighing over 100 pounds weekly. Id. at 23:12-18; 26:17-23; see also Osborn Dep. 15:16-23. The job required lifting fifty pounds daily, depending on the time of year. Osborn Dep. 18:7-15. More than one worker is assigned to park duty, and the two employees can assist each other when needed. Id. at 24:20-25:2.

Based on the description of the City and other public-works employees, the court determines that the essential functions of a public worker job include patching and repairing streets and storm sewers, snow plowing, mowing, tree trimming, trash removal, ice rink maintenance, sewer cleaning, maintenance and repair of

9

equipment, and basic carpentry. These activities involve moderate to strenuous physical exertion and require repetitive lifting, bending, kneeling and twisting.

These essential functions are incompatible with Otto's restriction to sedentary to light activity.[5] Otto's physician indicated that these physical restrictions were permanent in February 2009. The City was entitled to rely upon the FCE and determination of the physician. Even though employees sometimes help each other with a particular task, each employee is required independently to perform lifting and other strenuous tasks. Therefore, at the time of his termination, Otto was not able to perform the essential functions of the position without accommodation.

### 2. Reasonable Accommodation

Otto next argues that the City failed to accommodate him because it refused to assign "other employees [to] assist [Otto] with his work duties and responsibilities." Pl.'s Mem. Opp'n 12. The court considers claims for failure to accommodate using "a modified burden-shifting analysis, because discriminatory intent is not at issue." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074

---

[5] The court rejects Otto's argument that the FCE evaluator stated that she had "no reason to restrict him from a modified Public Works position." Her conclusion was based on the erroneous assumption that Otto "functions as a supervisor and can assign heavier, more repetitive work to others." Otto was not free to assign physical tasks to others.

10

(8th Cir. 2006) (citation and internal quotation marks omitted). Otto bears the initial burden "only to show that the requested accommodation is reasonable on its face, *i.e.*, ordinarily or in the run of cases." Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004) (citation and internal quotation marks omitted). Upon such a showing, the employer is left to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id.

Reallocating "the marginal functions of a job" may be a reasonable accommodation; however, it is well settled that "[a]n employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." Dropinski v. Douglas Cnty., Neb., 298 F.3d 704, 710 (8th Cir. 2002). In the present case, the court has determined that the essential functions of the job require moderate to strenuous physical effort. Otto was restricted to sedentary to light work. As a result, his requested accommodation would require other employees to perform Otto's job for him. Such an accommodation would transfer the essential functions of Otto's job to other employees, who would then be unable to perform their own duties. See id. No juror could find such an accommodation reasonable on its face, and summary judgment is warranted.

**B.   ADEA Claim**

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To establish a prima facie case of age discrimination, Otto must show that "(1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision."  Rahlf, 2011 WL 2375942, at *2.  At all times, Otto bears the ultimate burden "to prove that age was the 'but-for' cause of [his] termination."  Id.  (citation omitted).

The first and third elements are not in dispute.  Otto argues that he was meeting the applicable job qualifications.  The court has already determined, however, that Otto's physical restrictions disqualified him for the position of public works worker.  As a result, Otto fails to make a prima facie case, and summary judgment is warranted.

Moreover, Otto cannot meet his burden to show that he would not have been terminated but for his age.  There is no evidence that age played any role in the decision of the City.  Instead, the City terminated Otto when his doctors said that he was permanently disabled and restricted to light or sedentary duty.  As a result,

he could not perform the essential functions of a public works worker without unreasonable accommodation.  Therefore, summary judgment is warranted.

**C.   Workers' Compensation**

An employer may not "discharg[e] or threaten[] to discharge an employee for seeking workers' compensation benefits." Minn. Stat. § 176.82 subdiv. 1.  To establish a prima facie case of retaliatory discharge, Otto must show: (1) that he engaged in statutorily protected conduct; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two. See Kunferman v. Ford Motor Co., 112 F.3d 962, 965 (8th Cir. 1997) (MHRA standard).

The first two elements are not in dispute: Otto applied for workers' compensation benefits in 1990 and again in January 2007. The City terminated him on February 23, 2009.  The adverse action occurred over two years after the protected conduct.  A short interval between protected conduct and an adverse employment action "may occasionally raise an inference of causation," but, "in general, more than a temporal connection is required." Freeman v. Ace Tel. Ass'n, 467 F.3d 695, 697–98 (8th Cir. 2007) (interval of two to three weeks insufficient).  Here, even a temporal connection is lacking.

Otto also argues he "was told by Jylan [Johnson, City treasurer] once they didn't want anybody that was injured."  Otto

13

Dep. 115:11-12.  This alleged statement, however, occurred "a couple of years before I got fired or a year before I got fired" and happened "just ... in conversation." Id. at 115:19-21.  This stray comment is not sufficient to establish direct evidence of retaliatory intent.  Moreover, the alleged comment occurred at least a year before the adverse action, thus eroding any inference of causation.  Further, the December 2008 FCE and January 2009 finding of permanent restrictions are intervening events that diminish any causal connection, were one to exist.  Therefore, summary judgment is warranted on the workers' compensation claim.

**III.  Due Process**

"Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." Cleveland Bd. of Educ. v. Loudermill  470 U.S. 532, 538 (1985) (citation and internal quotation marks omitted). "[A] unilateral expectation in continued employment cannot create a protected property interest. Phillips v. State, 725 N.W.2d 778, 784 (Minn. Ct. App. 2007). Here, Otto was an at-will employee. He suggests no source creating an interest in continued employment other than being a public employee. Merely being a public employee does not create a property interest without some contractual or statutory basis.  As a result, no reasonable jury could find that Otto had a property interest in continued employment.

Otto also argues that his due process rights were violated because he did not receive a hearing before a neutral party before his termination. No hearing is necessary when the employee has no protected interest in his employment. See Speer v. City of Wynne, Ark., 276 F.3d 980, 984 (8th Cir. 2002) ("An at-will, public employee generally has no protected liberty interest in continued employment which would obligate a state employer to provide some form of a hearing in connection with the employee's discharge."); Peisch v. City of Pequot Lakes, No. A04-133, 2004 WL 1834152, at *2–4 (Minn. Ct. App. Aug. 17, 2004). Moreover, Otto had an opportunity to speak at the city council meeting before he was terminated. Under these circumstances, there is no violation of due process; indeed, Otto received "more process than was due." Peisch, 2004 WL 1834152, at *3. Therefore, summary judgment is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 14] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 18, 2011

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court